IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 11, 2006

## ALEX D. WELLS v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Fayette County**
**No. 5328     J. Weber McCraw, Judge**

---

**No. W2005-02841-CCA-R3-PC  - Filed May 18, 2006**

---

The petitioner, Alex D. Wells, appeals from the post-conviction court's denial of his petition for post-conviction relief. On appeal, he argues that the post-conviction court erred in finding that his guilty plea was voluntarily entered and that he received the effective assistance of counsel. Following our review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which Norma McGee Ogle and Alan E. Glenn, JJ., joined.

Matthew R. Armour, Somerville, Tennessee, for the petitioner, Alex D. Wells.

Paul G. Summers, Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Terry Dycus, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### BACKGROUND

The history and facts of this case are set out in our opinion on direct appeal as follows:

In March 2003, the Fayette County Grand Jury returned a forty-eight count indictment against the appellant, alleging offenses of aggravated burglary, burglary, and theft. On August 21, 2003, the appellant pled guilty to all counts, and a sentencing hearing was held. The State presented the victim impact statements of numerous victims as part of the proof at the sentencing hearing. All of the victim impact statements recounted the emotional and financial trauma created by the appellant's offenses. Specifically, one victim stated that the appellant took items that

had once belonged to his sister who died in 1997. Additionally, the appellant attempted to remove the lid from an urn containing the ashes of the victim's sister. Another victim lost all of her family pictures when the appellant left the photographs exposed in the rain. Further, the victim impact statements reveal that all of the victims were enraged. Notably, one victim opined that the appellant should be forced to work off his debt to the victims. The victim suggested, "I would like [$]5000.00 of sweat to roll down his back [and] for every drop that falls I would consider it a ½ cent of payback."

*State v. Alex Dewayne Wells*, No. W2003-02282-CCA-R3-CD, 2004 WL 1606976, *1 (Tenn. Crim. App., at Jackson, July 16, 2004). Following the sentencing hearing, the trial court sentenced the petitioner as a multiple offender to an effective sentence of thirty years.

At the post-conviction hearing, the petitioner testified that prior to pleading guilty he met with an investigator, Chuck Pugh. According to the petitioner, Investigator Pugh told him that he would get help for the petitioner's drug problem if he cooperated. The petitioner claimed that when he pled guilty to the forty-eight counts, he believed that he would be sentenced to a total of six to ten years, served at thirty-five percent. He explained that even though the guilty plea he signed listed the charges individually, he thought the trial court could only set his effective sentence in the six to ten year range. The petitioner testified that he was in shock when the trial court announced he was sentenced to thirty years and immediately told trial counsel he wanted to appeal. However, he admitted that he never discussed withdrawing his plea.

The petitioner recalled that he met with trial counsel a total of three times, and she sent him letters that communicated offers from the prosecutor. In particular, counsel told him that "the thefts and the burglaries would . . . definitely run concurrent," and that once Investigator Pugh testified that the petitioner cooperated he would get "six to ten." The petitioner recalled that no evidence was offered on his behalf at the sentencing hearing and counsel did not cross-examine the state's witnesses.

On cross-examination, the petitioner admitted that he had an extensive criminal record, but he explained he had been on drugs. He also admitted that he knew how the system worked and how to talk to law enforcement officers. The petitioner further admitted that he signed the statement he gave to Investigator Pugh and that he got along with the investigator. The petitioner acknowledged that Investigator Pugh said he would talk to the prosecutor about letting him plead as a Range II instead of a career offender, and that he was allowed to do so.

The petitioner also acknowledged that the trial court ran the counts concurrently that counsel told him would definitely run concurrently. However, the petitioner asserted that the guilty plea form did not contain anything about consecutive sentencing. The prosecutor asked the petitioner whether he signed a guilty plea form that stated: "I, Alex Wells, understand I am pleading guilty to the aforementioned forty-eight counts, have been advised that no plea bargain is offered and upon entry of my plea the Judge will set my sentence." The petitioner admitted that he signed the plea but

asserted he thought it meant the trial judge could only sentence him between six to ten years total. The petitioner testified that Investigator Pugh assured him that he would not get a lot of time because he helped recover the stolen property. The petitioner lastly denied that counsel asked him to stop talking to the investigator once counsel was appointed.

The petitioner's trial counsel testified that the police had no physical evidence that the petitioner committed the offenses, but counsel explained that the petitioner had confessed to the crimes. Counsel recalled that the officers spoke to the petitioner several times outside of counsel's presence, so she told the petitioner that "they probably [have] enough on [you], let them figure out the rest." Counsel also recalled that she discussed with the petitioner that she could not promise his sentences would run concurrently but she would beg the trial court for mercy.

Counsel testified that she believed the petitioner understood the six to ten year penalty noted on the plea form referred to the penalty on each count. Counsel based this observation on her conversations with the petitioner, the petitioner's experience with the system, and the petitioner's intelligence and high ability to understand and discuss his case. However, counsel admitted that she did not recall specifically saying on the day of the plea, "[n]ow, you know this is each count and they can each run consecutive."

Counsel recalled that she met with the petitioner five or six times. Counsel testified that she did not call Investigator Pugh at the sentencing hearing because the investigator's testimony that the petitioner cooperated would have been cumulative. Counsel also noted that Investigator Pugh had already helped the petitioner by urging the prosecutor to not enhance the petitioner to a career offender.

On cross-examination, counsel testified that she advised the petitioner to stop talking to law enforcement but she could not prevent him from freely talking to the officers. Counsel also testified that the victims' testimony at the hearing likely influenced the trial court's decision to impose consecutive sentencing, but she did not cross-examine the victims because "there was nothing to be gained by further antagonizing the victims." Counsel maintained that in her opinion the petitioner would have gotten more time if he had gone to trial but he "got hammered" considering his cooperation. Counsel reiterated that she discussed the possibility of consecutive sentencing with the petitioner and that he entered his plea knowingly and intelligently.

Following the hearing, the post-conviction court denied the petitioner's petition for post-conviction relief. The petitioner appealed.

## ANALYSIS

### STANDARD OF REVIEW

In order for a petitioner to succeed on a post-conviction claim, the petitioner must prove the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. §

40-30-110(f). On appeal, this court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings is de novo with a presumption that the findings are correct. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001). Our review of the post-conviction court's legal conclusions and application of law to facts is de novo without a presumption of correctness. *Id.*

## A. Voluntariness of Guilty Plea

The petitioner first argues that his guilty plea was involuntary because he thought the range of punishment was six to ten years total, not six to ten years per count. The petitioner refers to the procedures outlined in Tennessee Rule of Criminal Procedure 11 and states that his "plea of guilty was not properly entered due to the fact that the court and counsel failed to properly ensure that he understood the range of potential punishment and the possibility that the sentencing could be run consecutively."

To begin, we note that when analyzing a guilty plea, we look to the federal standard announced in *Boykin v. Alabama*, 395 U.S. 238 (1969), and the state standard set out in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977), *superseded on other grounds by* Tennessee Rule of Criminal Procedure 37(b) and Tennessee Rule of Appellate Procedure 3(b). *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). In *Boykin*, the United States Supreme Court held that there must be an affirmative showing by the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. *Boykin*, 395 U.S. at 242. Similarly, our Tennessee Supreme Court in *Mackey* required an affirmative showing of a voluntary and knowing guilty plea; namely, that the defendant has been made aware of the significant consequences of such a plea. *Mackey*, 553 S.W.2d at 340; *see Pettus*, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements or threats. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. *Pettus*, 986 S.W.2d at 542; *Blankenship*, 858 S.W.2d at 904. In determining whether a plea is "voluntary" and "intelligent," the court must consider

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship*, 858 S.W.2d at 904 (citations omitted).

We note that the petitioner has failed to include a transcript of the guilty plea hearing or a copy of the guilty plea form in the record on appeal. It is the petitioner's duty to prepare a record that conveys a fair, accurate and complete account of what occurred with respect to the issues forming the basis of the appeal. Tenn. R. App. P. 24(b); *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983). The appellate court is precluded from considering an issue where the record is incomplete and does not contain a transcript of the proceedings relevant to the issue on appeal or portions of the record upon which the appealing party relies. *State v. Roberts*, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988). Accordingly, we will presume there is no error in the trial court's finding the petitioner knowingly and voluntarily entered his plea of guilty. *See State v. Keen*, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999).

### B. Ineffective Assistance of Counsel

The petitioner lastly argues that he received the ineffective assistance of counsel. Specifically, he asserts that counsel did not apprise him of the sentencing ramifications and steered him away from a trial even though the state lacked physical evidence that he committed the crimes in question. When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the petitioner bears the burden of proving (1) that counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings were fundamentally unfair. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). This standard has also been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). Should the petitioner fail to establish either element of ineffective assistance of counsel, the petitioner is not entitled to relief. Our supreme court described the standard of review for ineffective assistance of counsel as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

*Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697). When a petitioner claims ineffective assistance of counsel in relation to a guilty plea, the petitioner must prove that counsel performed deficiently, and, but for counsel's errors, the petitioner would not have pled guilty but, instead, would have insisted upon going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In this case, assuming as true the petitioner's claim he would not have pled guilty but for counsel's errors, the petitioner has failed to prove that counsel's performance was deficient. At the post-conviction hearing, counsel testified that she met with the petitioner five or six times in preparation of his case, and she told the petitioner she could not promise that his sentences would

run concurrently. Counsel also testified that based on her conversations with the petitioner, the petitioner's intelligence, and his experience with the system, she believed he understood that the penalty set forth on the plea form referred to the penalty on each count. Counsel further testified that she thought the petitioner's "chance of concurrent sentencing [was] much greater with a plea than at a trial," and even though there was no physical evidence the petitioner committed the crimes, he admitted his involvement to the police. The post-conviction court accredited counsel's testimony.

Additionally, the record contains copies of two letters sent to the petitioner by counsel informing him of the possible sentences he faced *on each count* and stating there is no assurance the trial court would run the sentences concurrently. Furthermore, the post-conviction court's written findings also indicate that counsel's performance was not deficient. In the post-conviction court's order denying post-conviction relief, the court noted as follows:

> At the plea hearing the defendant testified under oath. He testified that he went over the plea form, the waiver of a trial and waiver of appeal forms with his attorney and signed them. He testified he understood what he was doing.
>
> He was informed that his sentence would be set by the Court.
>
> The defendant was asked if he was satisfied with the representation of [counsel] and he stated he was. He testified he had enough time to meet with his attorney and discuss this case. The defendant testified that no one had forced him to enter this plea of guilty, and that he did not have any questions about the proceeding.
>
> Before the plea proceedings, [counsel] went over the same information with petitioner.
>
> . . . .
>
> At the post conviction hearing, [counsel] testified about the investigation done by her and about conversations with the State with regard to the evidence available for trial.
>
> Petitioner's main complaint is that he believes that all of the sentences should run concurrently and that he was [led] to believe that all of such sentences would [run] concurrently. However, considering the overwhelming evidence against the [petitioner] and his testimony at the post conviction hearing about his defense, the Court believes his attorney negotiated the best deal possible by submitting the sentencing to the Judge and notes that many of the sentences were concurrent with each other.

The post-conviction court found that the petitioner failed to show any deficient performance on the part of counsel and it is our view the evidence does not preponderate against that finding. Therefore, the petitioner is not entitled to relief on this issue.

## CONCLUSION

Based upon the aforementioned authorities and reasoning, we affirm the post-conviction court's denial of post-conviction relief.

_____
J.C. McLIN, JUDGE